CENTER FOR DISABILITY ACCESS
M. ERIC PARKAN, ESQ., SBN 35687
RAY G. BALLISTER, JR., ESQ., SBN 111282
STEVEN J. WEDEL, ESQ. SBN 214908
100 East San Marcos Blvd., Suite 400
San Marcos, CA 92069
(760) 480-4162
Fax (760) 480-4170
RayBallister@CDA4Access.com

Attorneys for Plaintiff MARY JO KITTOK; CURTIS BELL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MARY JO KITTOK; CURTIS BELL,<br><br>        Plaintiff,<br><br>vs.<br><br>RALPHS GROCERY COMPANY, An Ohio Corporation, and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: EDCV 08-01627 CAS (RCx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>DATE: July 6, 2009<br>TIME:. 10:00 a.m.<br>CTRM: 5- 2nd Floor<br><br>HONORABLE CHRISTINA A. SNYDER |

///

///

///

1

2

## **TABLE OF CONTENTS**

CAPTION PAGE.............................................................................................i

TABLE OF CONTENTS..............................................................................ii

TABLE OF AUTHORITIES ................................................................ iii-v

I.   PRELIMINARY STATEMENT .................................................. 1-2

II.  RELEVANT FACTS ....................................................................... 2-4

III. SUMMARY JUDGMENT LEGAL STANDARD .........................4

IV. DISCUSSION........................................................................... 4-15

  A.  General Rule ....................................................................... 4-5

  B.  ADA Cause of Action ......................................................... 5-12

     1.  Plaintiffs Are Disabled ...............................................6

     2.  Ralphs' Store is a Public Accommodation ...................7

     3.  Ralphs' Store Had Barriers ................................... 7-10

     4.  The Barriers Were Readily Achievable to Remove .......... 10-11

     5.  Plaintiffs Encountered the Barriers....................... 11-12

  C.  State Causes of Action ........................................... 12-15

V.   CONCLUSION........................................................................... 15-16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   ///

21   ///

22   ///

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## STATUTES:

Federal Rule of Civil Procedure 56 ........................................................................... 4

28 C.F.R. Part 36, App. A .......................................................................................... 7

28 C.F.R. 36.211 ........................................................................................................ 9

28 C.F.R. Ch. 1, section 36.304(b)(18) ............................................................. 11 n.5

42 U.S.C. § 12102(2)(A) ........................................................................................... 6

42 U.S.C. § 12181(7) ................................................................................................. 7

42 U.S.C. § 12181(7)(E) ............................................................................................ 7

42 U.S.C. § 12181(9) ............................................................................................... 10

42 U.S.C. § 12182(a) ............................................................................................. 5, 6

42 U.S.C. § 12182(b)(2)(A)(iv) ..................................................................... 5, 6, 7, 10

42 U.S.C. § 12188(a) ................................................................................................. 6

42 U.S.C. § 12188(a)(1) ........................................................................................... 11

ADAAG § 4.1.2(5)(a) ................................................................................................ 8

ADAAG § 4.1.2(5)(b) ................................................................................................ 8

California Civil Code § 51 ........................................................................................ 12

California Civil Code § 52(a) ................................................................................... 13

California Civil Code § 54.1(d) ................................................................................ 12

California Civil Code § 54.3(a) ................................................................................ 13

California Civil Code § 54.3(c) ................................................................................ 13

///

///

///

///

///

1

**CASES:**

2  Anderson v. Liberty Lobby Inc.,

3      477 U.S. 242 (1986)........................................................................4

4  Botosan v. Paul McNally Realty,

5      216 F.3d 827 (9th Cir. 2000) ......................................................13

6  Celotex Corp. v. Catrett,

7      477 U.S. 317 (1986)........................................................................4

8  D'Lil v. Anaheim Hotel Partnership,

9      43 Fed. Appx. 96 (9th Cir. 2002).................................................8

10 Feezor v. Del Taco, Inc.

11     2005 WL 3619386  (S.D.Cal., 2005)........................................15

12 Goodwin v. C.N.J., Inc.

13     436 F.3d 44 (1st Cir. 2006)........................................................13

14 Gunther v. Lin,

15     144 Cal.App.4th 223 (2006) ......................................................14

16 Helen L. v. DiDario,

17     46 F.3d 325 (3rd Cir. 1995) .........................................................5

18 Hubbard v. Rite Aid Corp.,

19     433 F.Supp.2d 1150 (S.D.Cal., 2006) ......................................15

20 Independent Living Resources v. Oregon Arena Corp.,

21     982 F. Supp. 698 (D. Org. 1997) .................................................5

22 Lentini v. California Center for the Arts, Escondido,

23     370 F.3d 837 (9th Cir. 2004) .....................................................14

24 Molski v. Rapazzini Winery,

25     400 F.Supp.2d 1208 (N.D.Cal. 2005)........................................15

26 Munson v. Del Taco, Inc.,

27 ---Cal.Rptr.---, 2009WL1619783 (Cal. June 11, 2009)...................14

28

Parr v. L & L Drive-Inn Restaurant,

    96 F.Supp.2d 1065 (D. HI 2000) ........................................................11


Roberts v. Royal Atlantic Corp.

    542 F.3d 263 (2nd Cir. 2008) ............................................................5

Wilson v. Pier 1 Imports (US), Inc.,

    439 F.Supp.2d 1054 (E.D. Cal. 2006) ................................... 6, 7, 10-11

Wyatt v. Ralphs Grocery Co.

    65 Fed.Appx. 589 (9th Cir. 2003)..........................................................8

**ADDITIONAL AUTHORITY:**

Department of Justice, Technical Assistance Manual on the American

    with Disabilities Act (BNA) § III-4.4100 (1991) ................................7

///

///

///

## I.  PRELIMINARY STATEMENT

The Americans with Disabilities Act requires existing businesses to modify their parking to ensure that it is accessible to wheelchair users.  Plaintiffs Mary Jo Kittock and Curtis Bell filed this lawsuit against Ralphs Grocery Company ("Ralphs") after their repeated complaints over many months about the location of shopping cart-returns in the parking lot of a Ralphs grocery store in Riverside, California, were ignored: the returns were located in the access aisles of disabled parking spaces, rendering them non-usable to plaintiffs who require the access aisles of disabled parking spaces in order to exit and re-enter their vehicle in their wheelchairs.  After complaining over and over again – and watching as defendant merely moved the cart return from one disabled parking space to another – plaintiffs finally filed a lawsuit in state court, Riverside County, on October 7, 2008.  On November 13, 2008, Ralphs removed the action to this Court.

Now, finally spurred into action by plaintiff's lawsuit, defendant has belatedly moved the shopping cart-returns out of disabled parking spaces and permanently bolted them down so that they can no longer block access to disabled parking.[1]  The parties recently participated in a settlement conference, however it was unfortunately unsuccessful due in no small part to both the intransigence of defendant as well as defendant's coming to the conference without full authority to settle; indeed, the Honorable Magistrate Judge Rosalyn M. Chapman has issued an Order to Show Cause against defendant. See Docket Item # 21 (ordering defendant Ralphs to show cause as to why it failed to appear at the settlement conference without "full authority to negotiate and settle this case," as required by this Court's order of March 5, 2009).

Due to this failed settlement conference, plaintiffs are forced to expend more

---

[1]   Defendant had previously brought a motion for summary judgment prior to permanently bolting the corrals to the ground, which motion was summarily denied by this Court on the grounds that there was absolutely no evidence that defendant would not repeat the illegal conduct, given the extended and continued troubles that plaintiffs demonstrated prior to bringing the instant action. See Docket Item # 20.

---

time, resources and effort on the instant summary judgment motion.   Fortunately, however, the matter is straightforward and is eminently amenable to summary judgment.  As will be shown, there is no genuine issue as to any of the material facts of this case.   Furthermore, since defendant has acted in the course of this lawsuit to (finally) comply with the law regarding disabled parking, the plaintiffs seek only minimum statutory penalties totaling $8,000 ($4,000 for each plaintiff) and an end to the case.[2]  There are no triable issues of fact.

## II. RELEVANT FACTS

Plaintiff Mary Jo Kittok lost her left leg to bone cancer and has been using a wheelchair for more than two decades.  Exhibit 1 (Kittok Dec), ¶ 2.  Plaintiff Curtis Bell was struck by a car in 1970, and as a result of that accident had to have his left leg amputated below the knee. Exhibit 2 (Bell Dec.), ¶ 2.  Although Mr. Bell possesses a prosthesis, he relies largely on a manual wheelchair for mobility.  Id.

Defendant Ralphs owns and operates a grocery store ("Store") located at 6155 Magnolia Avenue, Riverside, California.   Plaintiffs reside at 24794 Lorna Drive, Moreno Valley, CA 92503, which is a ten (10) to fifteen (15) minute drive from the subject Store. Exhibit 1 (Kittock Dec), ¶¶ 3-4; Exhibit 2 (Bell Dec), ¶¶ 3-4.  Due to its proximity and convenience, plaintiffs were – prior to the filing of this lawsuit – in the habit of patronizing the subject Store on an average of every other week, including a visit on February 1, 2008. Exhibit 1, ¶ 5; Exhibit 2, ¶ 5.

During these visits, the plaintiffs constantly had trouble with the disabled parking at the Store.  Plaintiffs first noticed that the Ralphs shopping cart return corrals had been placed in the access aisles of the disabled parking spaces at the Ralphs store about 5 or 6 months prior to our filing of this lawsuit, possibly even as far back as the summer of 2007. Exhibit 1 (Kittock Dec), ¶ 6; Exhibit 2 (Bell Dec), ¶ 6.   The

---

2  Plaintiffs will also seeks attorneys' fees and costs as prevailing parties.

placement of the shopping cart return corrals in the access aisles of the disabled parking spaces made said spaces unusable to plaintiffs; both needed the extra space the access aisle provided in order to exit and/or re-enter their vehicle with their wheelchairs. Exhibit 1, ¶ 7; Exhibit 2, ¶ 7.  Thus, the placement of the cart returns denied the plaintiffs the use of the disabled parking spaces at the Store.

Plaintiffs began to complain to the employees of the Store; on at *least* three (3) separate occasions (i.e. three separate visits), they complained to the management of the Ralphs store and repeatedly asked that the shopping cart corrals be moved because their location made it impossible to use the disabled parking spaces. Exhibit 1 (Kittock Dec), ¶ 7; Exhibit 2 (Bell Dec), ¶ 7.  Plaintiffs even emphasized to defendant employees that the placement of the returns in the access aisles of the disabled parking was illegal and a violation of the ADA. Exhibit 1, ¶ 8; Exhibit 2; ¶8.  Their complaints gained plaintiffs nothing; indeed, the attitude of the defendant Ralphs was one of apathy, rudeness and arrogance. Exhibit 2, ¶ 9.  Simply put, plaintiffs felt – and the repeated ignoring of their complaints by defendant over many months and many, many visits appears to confirm this – that defendant simply did not care. Id.

Finally, the frustration and anger of plaintiffs reached its peak, and they filed the instant lawsuit in October, 2008, in state court.

Apparently in the last six (6) weeks or so, defendant Ralphs has finally ensured that the shopping cart return corrals cannot no longer block and/or impede the disabled parking spaces by permanently bolting them down in areas away from the disabled parking at the Store.[3]  This action was taken nearly eight (8) months after the filing of the lawsuit, and nearly a year and a half since plaintiffs first started complaining to defendant about the cart return corrals.  With the parking belatedly fixed, and with the

---

3   Plaintiffs are assured it was no earlier than this as the motion for summary judgment previously filed by Ralphs makes no mention of permanently bolting down the corrals and explicitly argued that Store customers could move the corrals at any time, a point highlighted by the Court in its decision to rule that injunctive relief was **not** moot. See Docket Item 20, Order on Defendant's Motion for Summary Judgment, pp. 5-6.

plaintiffs seeking only minimum damage awards set by statute, there is no remaining triable issue of fact.  Therefore, plaintiffs respectfully request the Court consider the points and authorities discussed herein and enter summary judgment on their behalf.

## III.   SUMMARY JUDGMENT LEGAL STANDARD

The Federal Rules authorize judgment as to "all or any part of" a claim upon a showing that there is no genuine issue of material fact as that particular claim.  Fed. R. Civ. Proc. 56.  A motion under Rule 56 "pierces" the pleadings and puts the opponent to the test of affirmatively coming forward with sufficient evidence in support of its claims to create a genuine issue for trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.

<u>Id.</u>, at 327.  Whether an issue is "material" is determined by the "substantive law's identification of what facts are critical and what facts are irrelevant."  <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248 (1986).  Whether a dispute is "genuine" is a determination for the judge, who must ask whether a <u>reasonable jury</u> could return a verdict for the non-moving party.  <u>Id.</u> at 248-250.

In the present case, there can be no genuine dispute over the material facts of the case and those facts inform the court and the parties that it would be a waste of judicial resources for this case to proceed to trial.  There is no genuine issue of material fact and this Court should grant the motion for summary judgment.

## IV. DISCUSSION

### A.   <u>General Rule</u>

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a

---

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  The term "discrimination" is a little misleading:

> Although the term "discrimination" evokes images of active discrimination, e.g., a person is expressly forbidden to enter the premises because of his or her disability, Congress also intended to eliminate more passive forms of discrimination, e.g., a person is physically unable to enter the premises because it lacks a wheel-chair accessible entrance.  H.R.Rep. No. 101-485(II) at 99 (1990), reprinted at 1990 U.S.C.C.A.N. 303, 382 (a primary purpose of the ADA is to "bring individuals with disabilities into the economic and social mainstream of American life.")

Independent Living Resources v. Oregon Arena Corp., 982 F.Supp 698, FN1 (D. Org. 1997).  The scope of the Act covers not only intentional discrimination, but also the discriminatory effects of "benign neglect, apathy, and indifference." Helen L. v. DiDario, 46 F.3d 325, 335 (3rd Cir. 1995) (internal quotations omitted).

For example, as discussed more fully below, discrimination under the Title III of the ADA often results (as in the present case) from a failure to comply with architectural codes and, therefore, to provide "full and equal" or "safe and convenient" access to facilities governed by the law.

**B.    ADA Cause of Action**

"A Title III claim requires that a plaintiff establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA."  Roberts v. Royal Atlantic Corp.  542 F.3d 263, 368 (2nd Cir. 2008).  Under Title III of the ADA, one form of discrimination is defined as: "a failure to remove architectural barriers . . .  in existing facilities . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  Thus, to "succeed on a ADA claim of discrimination on account of an architectural barrier, the plaintiff must also prove that (1) the existing facility at the defendants' place of business presents an

architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." <u>Wilson v. Pier 1 Imports (US), Inc.</u>, 439 F.Supp.2d 1054, 1067 (E.D. Cal. 2006).   The following, therefore, is a simplified statement of the elements necessary for Ms. Kittock and Mr. Bell to prove discrimination under this section:

**1.** The plaintiffs must be disabled [42 U.S.C. § 12182(a)];

**2.** The Store owned and operated by defendant Ralphs must be a place of "public accommodation" and, therefore, governed by Title III of the ADA [42 U.S.C. § 12182(a)];

**3.** The Store must have an architectural barrier [42 U.S.C. § 12182(b)(2)(A)(iv)];

**4.** It must have been "readily achievable" for that architectural barrier to be removed [42 U.S.C. § 12182(b)(2)(A)(iv)];

**5.** Plaintiuffs must have encountered or been aggrieved by the non-removed barrier. [42 U.S.C. § 12188(a)].

As will be established below, plaintiffs' civil rights were violated because Ralphs failed to provide a properly configured and ADA compliant disabled parking space, even though providing such was easily accomplished.   Plaintiff will now discuss each element, seriatim.


**1**.   <u>Plaintiffs Are Disabled</u>

Ms. Kittok is an amputee who uses a wheelchair for mobility.   Exhibit 1 (Kittok Dec), ¶ 2.   Mr. Bell is also an amputee who uses a wheelchair for mobility. Exhibit 2 (Bell Dec), ¶ 2.   There can be little doubt that both plaintiffs fit the qualification under the Americans With Disabilities Act as persons with a disability. <u>See</u> 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a "disability").   Given plaintiffs' inability to walk, this is neither a contestable nor a genuine issue for trial.

**2.**   <u>The Store is a Place of Public Accommodation</u>

A private entity qualifies as a place of public accommodation if it is doing business with the public and if it fits within one of several categories.  42 U.S.C. § 12181(7).  Sales and retail establishments are one of the categories of places of public accommodation.  42 U.S.C. § 12181(7)(E).  A grocery store selling to the general public fits within this category and, therefore, is a covered establishment.[4]

**3.**   <u>Defendant's Store had an Architectural Barrier</u>

The ADA defines "discrimination" as a failure to remove architectural **barriers** where it is readily achievable to do so.  42 U.S.C. § 12182(b)(2)(A)(iv).  The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> **III-4.4100**: *What is an architectural barrier?* Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.
>
> In many facilities, telephones, drinking fountains, mirrors, and paper towel dispensers are mounted at a height that makes them inaccessible to people using wheelchairs. Conventional doorknobs and operating controls may impede access by people who have limited manual dexterity. Deep pile carpeting on floors and unpaved exterior ground surfaces often are a barrier to access by people who use wheelchairs and people who use other mobility aids, such as crutches. Impediments caused by the location of temporary or movable structures, such as furniture, equipment, and display racks, are also considered architectural barriers.

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991).   Although the definition of "barrier" is not statutorily defined and seems somewhat mushy under the Technical Assistance Manual, the term has been consistently defined by judicial opinion to mean any physical condition that does not meet or exceed the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") found at 28 C.F.R. Part 36, App. A.  <u>See</u>, <u>e.g.</u>, <u>Wilson v. Pier 1 Imports</u>

---

4   For the record, defendant Ralphs has admitted that it operates and leases the subject grocery Store.  <u>See</u> Docket Item #6, Answer, ¶ 3.

1   (US), Inc., 439 F.Supp.2d 1054, 1066 (E.D. Cal. 2006) ("compliance with the ADAAG,

2   and not another standard, constitutes compliance with the ADA requirements . . . the

3   ADAAG constitutes the exclusive standards under Title III of the ADA."); Wyatt v.

4   Ralphs Grocery Co. 65 Fed.Appx. 589, 590, (9th Cir. 2003) ("Violations of ADAAG

5   standards indicate the existence of an architectural barrier."); D'Lil v. Anaheim Hotel

6   Partnership, 43 Fed. Appx. 96, 97 (9th Cir. 2002) ("ADAAG requirements [for a

7   particular condition] demonstrates that the lack of [compliance] is both a barrier and the

8   kind of barrier the ADA was intended to overcome.  Otherwise ADAAG would not

9   require [the particular condition].").   Thus, the ADAAG provides the standard to

10  determine if a facility has a barrier.

11

12          *Defendant Failed To Provide & Maintain Accessible Parking*

13          Over the many months that plaintiffs patronized the Store prior to bringing the

14  instant lawsuit, defendant Ralphs **repeatedly** failed to comply with the ADA with

15  respect to providing accessible parking.   The ADA requires accessible parking be

16  provided, along with an access aisle:

17

18          If parking spaces are provided for self-parking by employees or
            visitors, or both, then accessible spaces complying with 4.6 shall be
19          provided in each such parking area in conformance with the table
            below.
20          …
21
22          One in every eight accessible spaces, but not less than one, shall be
            served by an access aisle 96 in (2440 mm) wide minimum and shall be
23          designated "van accessible" as required by 4.6.4.
24
25  ADAAG §§ 4.1.2(5)(a) & (b).  Plaintiffs do not contend that defendant Ralphs failed

26  *initially* to provide accessible parking. See Exhibit 3 (Pre-Filing Photographs).

27  However, plaintiffs do allege that Ralphs failed to maintain usable and accessible

28  parking as required by law.  The Technical Assistance Manual on The Americans With

Disabilities Act clearly lays out the requirement for public accommodations to maintain accessible features:

> **Maintenance of accessible features**. Public accommodations **must** maintain in working order equipment and features of facilities that are required to provide ready access to individuals with disabilities…

Department of Justice, ADA Title Ill Technical Assistance Manual on The Americans With Disabilities Act, § III-37000 (1993) (emphasis added).  The Technical Assistance Manual further provides two examples that demonstrate that interfering with required accessible features to save money or for business convenience is unlawful:

> ILLUSTRATION 1: It would be a violation for a building manager of a three-story building to turn off an elevator during business hours in order to save energy.
>
> ILLUSTRATION 2: Deactivating accessible automatic doors because of inclement weather would not be permitted.

Id.   It is simply black letter law that where a business provides accessible features, "they **must remain accessible and not blocked by obstacles** such as furniture, filing cabinets, or potted plants."  Id.  Or, as in the instant case, blocked with shopping cart return corrals.

Finally, the Code of Federal Regulations states that a business like Ralphs has a duty to: "*maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part*."  28 C.F.R. § 36.211.  The section-by-section analysis of 28 C.F.R. § 36.211 states:

> The Act requires that, to the ***maximum extent feasible***, facilities must be accessible to, and usable by, individuals with disabilities. This section recognizes that it is not sufficient to provide features such as accessible

routes, elevators, or ramps, if those features are not maintained in a manner that enables individuals with disabilities to use them. Inoperable elevators, locked accessible doors, or "accessible" routes that are obstructed by furniture, filing cabinets, or potted plants are neither "accessible to" nor "usable by" individuals with disabilities."

56 Fed. Reg. 35544, 35562.

With all of the above in mind, therefore, it is <u>undisputable</u> that Ralphs failed to maintain the required accessible parking spaces for its Store by repeatedly and continuously blocking the access aisles of disabled parking spaces with shopping cart return corrals for a period of many months. <u>See</u> Exhibit 3 (Pre-Filing Pictures); Exhibit 1 (Kittock Dec), ¶¶ 6-10; Exhibit 2 (Bell Dec), ¶¶ 6-10.

In summary, defendant Ralphs failed to comply with the ADAAG with respect to disabled parking for at least the five to six months preceding the filing of the instant lawsuit, and possibly as far back as the summer of 2007.  There were architectural barriers to full and equal access for the simple reason that the disabled parking was not useable by disabled patrons of the Store, the plaintiffs included.

**4.**    <u>The Barriers Were Readily Achievable To Remove</u>

For existing facilities under Title III of the ADA, discrimination is defined as: "A failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  This legal obligation is held by all existing facilities and is colloquially referred to as "readily achievable barrier removal."   The phrase, "readily achievable" is defined by statute and can involve a fact intensive analysis.  <u>See</u> 42 U.S.C. § 12181(9).

In the present case, however, defendant Ralphs has already removed the barrier  - by permanently bolting the shopping cart return corrals to ground such that they can never again block or impede the use of the access aisles of the disabled parking spaces – and therefore established that it was "readily achievable" to do so.  Under such circumstances, there is no genuine issue for trial.  For example, in the case of <u>Wilson v.</u>

Pier 1 Imports (US), Inc., 439 F.Supp.2d 1054 (E.D. Cal. 2006), the Wilson court entertained a motion for summary judgment and the issue of "readily achievable" barrier removal.  The court stated:

> Having found a barrier, the next step is determining whether the removal of the barrier is readily achievable. *Given that the barrier has already been cured, the court must find that it was readily achievable, and thus that it violated the ADA and subsequently the Unruh Act.* In sum, the court finds that the barrier existed, cure was readily achievable, and therefore the barrier violated the ADA and the Unruh Act.

Id. at 1069 (emphasis added).  Later in the same opinion, the court reiterated, "Once again, *since defendants have already remedied the barrier, the court must find its removal was readily achievable* and grant summary judgment to plaintiff under the state law claim."  Id. at 1071 (emphasis added).   By removing the barriers, Ralphs has conclusively proven that it was capable of doing so, and therefore the removal of the barrier at issue was "readily achievable."   There can be no genuine dispute as to this material issue of fact.[5]

### 5.   Plaintiffs Encountered the Barrier

Under the ADA, as well as general standing principles, a plaintiff must have encountered or have actual knowledge of a barrier that threatens to impede full and equal access in order to challenge that barrier.   See 42 U.S.C. § 12188(a)(1) ("Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice" that a defendant is not complying with the law).   In fact, a person can gain this "actual notice" from merely being told about it.

---

5   Furthermore, if additional evidence is needed showing that ensuring that disabled parking was available – and maintainable – to disabled patrons was "readily achievable, one need look no further than the United States Justice Department.   In the Code of Federal Regulations, the Justice Department makes clear that it considers providing accessible parking something that is "easily accomplishable and able to be carried out without much difficulty or expense," and thus there is a presumption that it is readily achievable to do so. See 28 C.F.R. Ch. 1, section 36.304(b)(18).

See e.g., Parr v. L & L Drive-Inn Restaurant, 96 F.Supp.2d 1065, 1081 (D. HI 2000) ("Once Plaintiff either encountered discrimination or learned of the alleged violations through expert findings or personal observation, he had 'actual notice' that Defendant did not intend to comply with the ADA. Because Plaintiff is not required to engage in a 'futile gesture,' Plaintiff should be allowed to sue for the violations he did not encounter.")  In the present case, as it abundantly shown by declaration, both plaintiffs actually encountered, and had to deal with, the barriers repeatedly over many months. See Exhibits 1 & 2, *passim*.  There is no genuine issue of material fact with respect to this element.

   **In summary**, each of the elements is beyond genuine contest: (1) Plaintiffs are disabled; (2) the Ralphs Store is a place of public accommodation; (3) the Store did have an architectural barrier; (4) the barrier was "readily achievably" removed; and (5) both plaintiffs encountered the non-removed barrier repeatedly, over many months.  In 1990, Congress passed a law (the ADA) that this is discriminatory and the ADA has been violated.  Therefore, there is no genuine issue of material fact regarding plaintiffs' claim of an ADA violation.

## C.   State Causes of Action

   Plaintiffs' state causes of action, *i.e.*, the Unruh Civil Rights Act ("Unruh") and California's Disabled Persons Act ("DPA"), are predicated upon a violation of the Americans with Disabilities Act.  Unruh provides that "a violation of the right of any individual under the Americans With Disabilities Act of 1990 shall also constitute a violation of this section."  Cal. Civ. Code § 51.  The DPA likewise provides that, "a violation of the right of an individual under the Americans With Disabilities Act of 1990 also constitutes a violation of this section…"  Cal. Civ. Code § 54.1(d).  Thus, a violation of the ADA is a violation of both Unruh and the DPA.  As outlined above, there is no triable issue as to the ADA claim and, therefore, there is no triable issue as

to whether Unruh or the DPA has been violated.

One difference between federal and state law, however, are the available remedies.  Title III of the ADA does not provide for damages.  See  Goodwin v. C.N.J., Inc.  436 F.3d 44, 50 (1st Cir. 2006) ("money damages are not an option for private parties suing under Title III of the ADA").  But under both Unruh and the DPA, a prevailing plaintiff is entitled to money damages.   Cal. Civ. § 52(a) & § 54.3(a).  In fact, there are two types of damages available under Unruh and the DPA:  actual damages and statutory damages.  Id.  "The statute lists actual damages and statutory damages as two separate categories of damages that a plaintiff may recover."  Botosan v. Paul McNally Realty, 216 F.3d 827, 835 (9th Cir. 2000).  The statutory damages can range from a maximum of three times actual damages to a statutorily set minimum: $4,000 under Unruh and $1,000 under the DPA.  Cal. Civ. § 52(a) & 54.3(a).  The $4,000 or $1,000 minimum award is called "statutory minimum damages" and there is no need to prove injury to recover these civil penalties.  "Proof of actual damages is not a prerequisite to recovery of statutory minimum damages."  Botosan, 216 F.3d at 835. In fact, the California Supreme Court, noted that:

> Section 52 provides for minimum statutory damages of $250 [previous minimum] for *every violation* of section 51, regardless of the plaintiff's actual damages.  As this court noted in Orloff v. Los Angeles Turf Club, supra, 30 Cal.2d at page 115, 180 P.2d 321, construing an earlier version of the statute, the statute provides for damages aside from any actual damages incurred by the plaintiff.  " This sum is *unquestionably a penalty* which the law imposes, and which it directs shall be paid to the complaining party....  [But], while the law has seen fit to declare that it shall be paid to the complaining party, it might as well have directed that it be paid into the common school fund.  The imposition is in its nature penal, having regard only to the fact that the law has been violated and its majesty outraged.

Koire v. Metro Car Wash, 40 Cal.3d 24, 33-34 (1985) (emphasis added).

Unfortunately, a plaintiff cannot recover penalties or damages under both the Unruh and the DPA.  "A person may not be held liable for damages pursuant to both this section and Section 52 for the same act or failure to act."  Cal. Civ. § 54.3(c). Plaintiffs are therefore forced to make an election.  They elect to proceed under the

Unruh Act.  Plaintiffs elect to proceed under the Unruh Act and to limit their claims to the statutory minimum for several reasons.

First, by forgoing any request for actual damages, the case can be concluded on summary judgment because there is no triable issue over the *amount* of damages (only the statutorily set minimum is sought).

Secondly, plaintiffs argue that statutory damages under the Unruh Act are now appropriate without further hand-wringing over unsettled law.  Under recent California case law, proceeding under Unruh previously required plaintiffs to prove *intentional* discrimination A.  See Gunther v. Lin,  144 Cal.App.4th 223, 232, (2006) ("A plaintiff can now go for the relatively larger recovery provided by section 52 but will have the higher burden of establishing intentional discrimination under section 52, or, alternatively, may elect to proceed under section 54.3 and have a much lower burden-simple technical violation of the ADA without any showing of intent-but can only recover a lesser amount.").

The Ninth Circuit had reached a different conclusion and determined that there was no need to prove intent to recover under Unruh, if the violation is predicated upon an ADA claim.   See Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 847 (9th Cir. 2004).   Recently, the Ninth Circuit called the Gunther decision "anomalous" and questioned its validity.    In fact, the Ninth Circuit certified the question to the California Supreme Court.  Munson v. Del Taco, Inc., 522 F.3d 997 (9th Cir. 2008).[6]

As this motion was being drafted, the California Supreme Court handed down its decision: it overturned Gunther on this question, and held that there is no need to demonstrate intent – of any kind – in order to obtain damages under the Unruh Act pursuant to an ADA violation. See Munson v. Del Taco, Inc., ---Cal.Rptr.---,

---

[6]    Plaintiffs' counsel's firm argued the case in front of the California Supreme Court on May 6, 2009.

2009WL1619783, *1 (Cal. June 11, 2009) ("…we conclude *Lentini's* interpretation was right and *Gunther's* was wrong…A plaintiff who establishes a violation of the ADA, therefore, need not prove intentional discrimination in order to obtain damages under section 52.")

Therefore, plaintiffs argue that the instant case is ripe (by the proverbial 'skin of the nose') for the $4,000 minimum statutory damage (for each plaintiff) pursuant to the Unruh Act.

It is worth noting, as well, that plaintiffs would be in their rights to ask for *multiple* penalties under the Unruh Act; that is, multiple penalties of minimum statutory awards, since the violation was ongoing and continuous, and plaintiffs have offered evidence that they encountered the barriers – and complained about them – on at least three (3) separate occasions. See Feezor v. Del Taco, Inc. 2005 WL 3619386, 3 (S.D.Cal., 2005) (where a disabled plaintiff went to the same Del Taco restaurant on three different occasions and encountered the unlawful barriers on each of those three occasions and the District Court ruled that, "A plaintiff may recover for each actual visit to a facility that is in violation of statutory standards. Such an interpretation is supported by case law and is consistent with the plain language of [the Unruh Civil Rights Act]." See also Molski v. Rapazzini Winery, 400 F.Supp.2d 1208, 1211-1212 (N.D.Cal. 2005) ("California Civil Code § 52(a), which provides for a penalty of $4,000 for 'each and every offense' of the Unruh Civil Rights Act . . . 'each offense' is each time the plaintiff visits the non-compliant place of public accommodation or each specific instance in which the plaintiff is deterred from attempting to visit."); Hubbard v. Rite Aid Corp., 433 F.Supp.2d 1150, 1170 (S.D.Cal., 2006) ("The Court concludes that Plaintiffs are entitled to statutory damages of $4,000 under Section 52 for these three visits for an award of $12,000 to each Plaintiff totaling $24,000").

However, in the interests of keeping this matter as simple and as clear-cut for summary judgment as possible, plaintiffs seek only one (1) award of the minimum statutory penalty under the Unruh Act for each of them:  $4,000 each for Mr. Bell and

Ms. Kittock, for a total of $8,000 in minimum statutory damages.

This matter is suitable for summary judgment. There is no triable issue regarding damages.

## V. CONCLUSION

No further judicial resources should be expended in this case: it is prepared for summary judgment. It is beyond legitimate dispute that: (1) Plaintiffs are persons with a disability; (2) the Ralphs Store is a place of public accommodation; (3) the Store did have architectural barriers; (4) the barriers were "readily achievable" to remove; and (5) Plaintiffs encountered the non-removed barriers. As defendant has finally brought the subject Store's parking into ADA compliance, plaintiffs seek their remaining remedy of minimum statutory damages, or $8,000, which does not involve a triable issue.

Ms. Kittok and Mr. Bell respectfully request this Court grant their motion for summary judgment.

Dated: June 11, 2009                    CENTER FOR DISABILITY ACCESS


                                        By:   /s/ Mark D. Potter
                                              Mark D. Potter
                                              Attorneys for Plaintiff

1

2                              **PROOF OF SERVICE**

3            KITTOK/BELL V. RALPHS, ET AL.          Case # EDCV-08-1627

4

5    I, the undersigned, am over the age of eighteen years and am resident of San Diego County,
     California; I am not a party to the above-entitled action; my business address is 100 East San
     Marcos Blvd., Suite 400, San Marcos, California, 92069.

6

7            On June 12, 2009 I served the following document(s):

8    **MOTION FOR SUMMARY JUDGMENT, NOTICE**
     **MOTION FOR SUMMARY JUDGMENT, POINTS AND AUTHORITIES**
9    **MOTION FOR SUMMARY JUDGMENT, SEPARATE STATEMENT**
     **MOTION FOR SUMMARY JUDGMENT, EXHIBITS**

10
     Addressed to:
11   Gregory F. Hurley,Esquire
     GREENBERG & TRAURIG LLP
12   3161 Michelson Dr., Ste. 100
     Irvine, CA 92612

13
     ☐    BY MAIL: I caused such envelope with postage thereon fully prepaid to be placed in
14        the United States mail at San Marcos, California.
     ☐    BY FACSIMILE: In addition to the service by mail as set forth above, I forwarded a
15        copy of said documents via facsimile to the listed facsimile number.
     ☐    BY OVERNITE EXPRESS: I caused such envelope with postage thereon fully
16        prepaid to be placed in the Designated Overnite Express drop box at San Marcos,
          California.
17   ☐    BY PERSONAL SERVICE: I caused said documents to be personally served on all
          listed recipients via Diversified Legal Services.
18   ☑    BY ELECTRONIC MAIL TRANSMISSION: via the United States District Court,
          Central District of California's CM/ECF system. I caused listed documents to be
19        electronically filed and subsequently emailed to the recipient.

20           Executed on June 12, 2009 from San Marcos, California.

21   I declare under penalty of perjury under the laws of the State of California that the above is
     true and correct.
22

23

24   _____
25                Lauren Whitehead

26

27

28   PROOF OF SERVICE